**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| SANDRA INLOW, | : | Case No. 3:19-cv-329 |
| | : | |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| Vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

## I. INTRODUCTION

Plaintiff Sandra Inlow brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits, Supplemental Security Income, and for a period of benefits. Plaintiff filed her applications for benefits in January 2017. These claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Kevin R. Barnes concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action. Plaintiff seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 7), the Commissioner's Memorandum in Opposition (Doc. No. 9), and the administrative record (Doc. No. 6).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since October 30, 2014. At that time, Plaintiff was fifty-nine years old. Accordingly, she was considered "person of advanced age" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(e), 416.963(e).[1] She has a high school education.

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 6-2, PageID 38-49), Plaintiff's Statement of Errors (Doc. No. 7), and the Commissioner's Memorandum in Opposition (Doc. No. 9). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as the Social Security Act defines it—has specialized meaning of limited scope. It encompasses "any medically determinable

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241(citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651

(6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. THE ALJ'S DECISION

As noted previously, it fell to the Administrative Law Judge to evaluate the evidence connected to Plaintiff's applications for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since her alleged onset date, October 30, 2014.

Step 2: She has the severe impairments of vestibular dysfunction; fibromyalgia; chronic pain syndrome; osteoarthritis; and alcohol abuse disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … subject to the following additional limitations: The claimant should never climb ladders, ropes or scaffolds, or crawl. She is able to climb ramps and stairs, balance, stoop, crouch or kneel on an occasional basis. She should avoid hazardous machinery and unprotected heights. She

> would be limited to jobs which could be performed while using a cane for balance and ambulation."

Step 4: Plaintiff is capable of performing her past relevant work as a sales operation manager.

(Doc. No. 6-2 at PageID 41-48). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 48.

## V. DISCUSSION

Plaintiff challenges the Step Four determination that she is capable of performing her past relevant work. She maintains that this determination lacks careful consideration of "the physical and mental demands of [her] past work as a sales operation manager and the limiting effects of her impairments." (Doc. No. 7, PageID 1525).

A five-step sequential evaluation process is utilized to determine whether an individual is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). The burden is on the claimant through Step Four, and at Step Four, the claimant must prove "the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work…" *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The regulations define "past relevant work" as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1).

The claimant must demonstrate "he or she cannot perform his or her past relevant work as 'actually performed' *and* as 'generally required by employers throughout the

5

national economy.'" *Smallwood v. Comm'r of Soc. Sec.*, No. 2:16-cv-1166, 2018 WL 494522, at *6 (S.D. Ohio Jan. 22, 2018) (Vascura, M.J.), report and recommendation, adopted, 2018 WL 1512907, at *1 (S.D. Ohio Mar. 27, 2018) (Sargus, D.J.) (emphasis added) (citing SSR 82-61, 1982 WL 31387, at *2 (1982); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002); 20 C.F.R. § 404.1560(b)(2).

Plaintiff argues that she is incapable of performing her past relevant work and describes her past work as a sales operation manager as she actually performed it. (Doc. No. 7, PageID 1523-24). She details the requirements of her position, such as frequent traveling throughout the country that involved lifting and carrying her luggage and a briefcase. *Id.* at 1524. She also references the hourly demands, which included 10 to 12-hour days, and standing for approximately 8 hours per day. *Id.* Making her position even more clear, she explicitly argues that the ALJ "neglected to supplement the record with how [Plaintiff] can perform the job now versus how she performed it in the past." *Id.*

The finding of non-disability, however, did not relate to Plaintiff's ability to perform her past work as she actually performed it. Rather, it rested exclusively on the determination that Plaintiff was capable of performing her past relevant work as a sales operation manager as generally performed in the national economy:

> In comparing [Plaintiff's] residual functional capacity with the physical and mental demands of [her past relevant] work, the undersigned finds that [she] is able to perform it as generally performed. This is supported by the testimony of the vocational expert. In response to a hypothetical question containing [Plaintiff's] vocational factors and residual functional capacity,

> [the vocational expert] specifically stated that such an individual could perform [Plaintiff's] past relevant work as a Sales Operation Manager, at the sedentary level as it is generally performed in the national economy.

(Doc. No. 6-2, PageID 48).

Yet, in the present case, Plaintiff makes no attempt to assert that she is incapable of performing her past work as generally performed in the national economy. Notably, she does not argue that she is incapable of performing any of the duties set forth in the Dictionary of Occupational Titles, which describes the requirements of the work as generally performed. *See* Manager, Sales, DICOT 163.167-018, 1991 WL 647311; *see also* SSR 00-4P, 2000 WL 1898704 (2000), at *2 ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy"). Instead, she focuses solely on the specifics of her past relevant work as she actually performed it.

And, the specifics of her past work as she actually performed it, do not support an argument that she is incapable of performing her past work as generally performed in the national economy. For example, as indicated above, Plaintiff highlights the hourly demands of her past work, specifically the 8 hours per day that were spent standing. Yet, as reflected in the Dictionary of Occupational Titles, this degree of standing would not be expected in her past work as generally performed. Rather, by nature of being sedentary work, her past work as generally performed in the national economy would involve "sitting

most of the time," and walking and standing on an occasional basis, or for brief periods of time. *See* Manager, Sales, DICOT 163.167-018, 1991 WL 647311.

Even assuming *arguendo* that Plaintiff had argued she was incapable of performing her past work as generally performed, a careful review of the record demonstrates that substantial evidence supports the determination that Plaintiff is capable of performing her past relevant work. Indeed, "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) (citations omitted) (internal quotations omitted). Relatedly, "[a] vocational expert [] may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental demands imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

In this case, the vocational expert specifically testified that he did not "believe that the job could be done as she performed it," but that Plaintiff was capable of performing her past relevant work as generally performed in the national economy. (Doc. No. 6-2, PageID 87). The difference seemingly rested on the determination that Plaintiff's past relevant work as actually performed equated to light work, whereas her past work as generally performed in the national economy was considered sedentary work. *Id.* at 86.

The vocational expert's testimony as to Plaintiff's ability to perform her past relevant work was in response to a series of hypothetical questions, each building on the one before it. The third question, which accurately portrayed Plaintiff's impairments, incorporated all of the limitations that ultimately were included in Plaintiff's residual functional capacity. *Id.* at 87. Plaintiff makes no effort to contest the hypothetical question or the vocational expert's related testimony. Likewise, Plaintiff's counsel did not challenge the sufficiency of the hypothetical or related testimony at the hearing.

And although Plaintiff vaguely asserts at the onset that the ALJ erred by "…incorrectly relying on a residual functional capacity (RFC) that produced a finding that [Plaintiff] can perform such past relevant work…," she later seems to agree with the residual functional capacity assessment. For instance, she specifically recognized that the ALJ acknowledged her "impairments do cause significant limitations," and that "he found restrictions given for sedentary work with most postural maneuvers reduced to no more than occasionally fully accommodate her complaints of joint pain and concerns of dizziness impacting her imbalance." (Doc. No. 7, PageID 1524). She also notes that he accommodated her use of a cane. *Id.* Plaintiff does not assert that any of these limitations were insufficient to accommodate her impairments, nor that she was incapable of performing work at the sedentary level with additional restrictions.

Nevertheless, even looking briefly to the residual functional capacity assessment, it is apparent that the medical evidence was carefully considered. For instance, the ALJ

9

assessed a more restrictive RFC than that reflected in the medical opinion evidence. State agency reviewing physicians, Drs. David Knierim and Teresita Cruz, agreed that Plaintiff would be capable of "light level work with only minimal postural limitations." (Doc. No. 6-2, PageID 47). However, these opinions were only afforded "partial weight" because "the claimant's reports of pain corroborated by the more recent rheumatology records reasonably limit her to sedentary level work with additional postural restrictions." *Id.* Moreover, "these physicians did not have a complete record to review as additional evidence was received at the hearing level." *Id.* Rendering additional restrictions, the ALJ provided for the use of a cane because "physical and occupational therapy records note that this has assisted her in maintaining her balance more consistently." *Id.*

Plaintiff's remaining arguments are unpersuasive. She cites to cases from outside the Sixth Circuit for the proposition that all physical requirements of her past work should have been specifically cited in the non-disability decision as well as a detailed evaluation of the limiting effects that these demands have on her physical impairments.[2] But these efforts are unavailing because, as discussed above, reasonable reliance on the vocational expert's testimony in response to a hypothetical question that accurately portrayed Plaintiff's impairments, constitutes substantial evidence that supports the Step Four determination. In responding to the accurate hypothetical question, the vocational expert was required to consider Plaintiff's impairments and resulting limitations in light of the

---

[2] *See Novak v. Barnhart*, 180 F.Supp.2d 990, 996-97 (E.D. Wis. 2001).

10

demands of her past relevant work.  The vocational expert was also told to assume that the hypothetical related to a "person of [Plaintiff's] age, education, and work experience and skill set."  (Doc. No. 6-2, PageID 86).

Ultimately, substantial evidence supports the determination at Step Four that Plaintiff is capable of performing her past work as generally performed in the national economy.  Plaintiff's failure to argue the contrary means that she has not satisfied her burden of proving that she is incapable of performing her past relevant work as a sales operation manager as she actually performed it *and* as generally performed in the national economy.  Accordingly, Plaintiff's Statement of Errors is without merit.

## IT IS THEREFORE ORDERED THAT:

1. The Commissioner's non-disability determination be **AFFIRMED**; and
2. The case be terminated on the docket of this Court.

June 10, 2021                                                                          *s/Sharon L. Ovington*
                                                                                        Sharon L. Ovington
                                                                                        United States Magistrate Judge